*309
 
 OPINION OF TIIE COURT
 

 Per Curiam.
 

 The Commission on Judicial Conduct sustained four charges of misconduct and determined that petitioner, a justice of the Supreme Court, should be censured
 
 {see
 
 NY Const, art VI, § 22; Judiciary Law § 44). Upon our review of the record and after consideration of the legal arguments raised by petitioner, we sustain the finding of misconduct and accept the determined sanction of censure.
 

 The Commission’s complaint alleged five charges of misconduct. All but one of the charges accused petitioner of engaging in improper political activity in the course of a judicial campaign. Petitioner answered the complaint, contending that the rules restricting the political activity of judges and judicial candidates infringed his rights under the First Amendment of the United States Constitution. Thereafter, petitioner entered into an agreed statement of facts with the Commission Administrator and counsel in which he acknowledged that he committed four acts of misconduct in violation of the Rules Governing Judicial Conduct. Petitioner, however, reserved his right to challenge the constitutional validity of the rules underlying the political activity charges.
 

 As stipulated by petitioner, the first instance of misconduct occurred in the spring of 1995 when petitioner, then a practicing attorney, was seeking the Democratic nomination for Supreme Court in his district. Petitioner met on several occasions with Democratic Party officials and the other prospective judicial candidates to discuss future campaign expenditures. He agreed that his share of joint expenses would be about $10,000 and the other candidates were to pay similar round-figure sums. After actively campaigning that summer and seeming the Democratic Party nomination in September 1995, petitioner issued a personal check in the amount of $10,000 to the Nassau County Democratic Committee without having received an itemized bill or receipts detailing the expenditures made on his behalf as a judicial candidate.
 

 Petitioner did not claim that this payment was an ordinary contribution or assessment permissible by a non-judge judicial candidate in limited circumstances
 
 {see
 
 22 NYCRR 100.5 [A] [3]). Rather, he admitted that the money was intended to reim
 
 *310
 
 burse the party for past and future expenditures in connection with his campaign. In the agreed statement of facts, petitioner admitted that this conduct amounted to an impermissible contribution of funds to a political organization other than his own campaign for judicial office in violation of sections 100.5 (A) (1) and 100.5 (A) (1) (c), (d) and (h) of the Rules Governing Judicial Conduct (22 NYCRR).
 

 Petitioner did not win a Supreme Court seat in the November 1995 election but was later elected to serve as a Nassau County District Court judge, taking office in January 1997. In March 2000, while petitioner was a District Court judge, he took part in a Working Families Party “phone bank” on behalf of a Nassau County legislative candidate. His participation included calling prospective voters — without giving his name or identifying himself as a judge — and encouraging them to vote for the candidate at an upcoming special election. Petitioner asserted that his motive was “to generate good will” with the Working Families Party in the hope that the party would endorse him as a judicial candidate in the upcoming Supreme Court race later that year. As petitioner acknowledged, this conduct violated sections 100.5 (A) (1) and 100.5 (A) (1) (c), (d), (e), (f) and (g).
 

 Three months later, petitioner attended a Working Families Party candidate screening meeting. Although petitioner was pursuing the party endorsement for Supreme Court, he was not scheduled to be interviewed. He nonetheless sat at a table with members of the Working Families Party and asked five prospective candidates for judicial and nonjudicial office whether they would publicize the Working Families Party endorsement on their campaign literature if supported by the party. Petitioner conceded in the agreed statement of facts that this political activity is prohibited in sections 100.5 (A) (1) and 100.5 (A) (1) (c), (d) and (g).
 

 In September 2000, petitioner was nominated for Supreme Court by the Democratic Party and endorsed by the Working Families Party. He was elected to Supreme Court and assumed office in January 2001. In April 2001, while assigned to the Matrimonial Part of Supreme Court, petitioner signed an ex parte temporary restraining order that was later vacated by an Appellate Division Justice. When the attorney who took the appeal advised petitioner that the order had been vacated, petitioner told the lawyer that he would be on the bench another 11 years, that he had a “long memory” and would remember the law firm’s actions and that it was a “good thing”
 
 *311
 
 the firm did not practice matrimonial law. In the agreed statement of facts, petitioner recognized that these comments were intimidating and could be construed as a threat, thereby indicating bias against the lawyer and his firm should they appear before him in the future.
 
 [1]
 

 The agreed statement of facts setting forth these four instances of misconduct was presented to the full Commission. The Commission heard oral argument and issued a written determination rejecting petitioner’s challenge to the constitutional validity of the pertinent political activity restrictions and finding petitioner had engaged in misconduct warranting censure. The determination is reviewable as of right, and petitioner now seeks that review.
 

 Petitioner argues that the political activity restrictions underlying three of the charges — sections 100.5 (A) (1) and 100.5 (A) (1) (c), (d), (e), (f), (g) and (h)
 
 [2]
 
 —violate the First Amendment of the United States Constitution. These rules generally prohibit judges and judicial candidates from engag
 
 *312
 
 ing in certain political activities.
 
 [3]
 
 Petitioner raised his constitutional challenge to the validity of the political activity limitations before the Commission
 
 (cf. Matter of Mason,
 
 100 NY2d 56 [2003]).
 

 Petitioner asserts that to the extent New York imposes restrictions on the ability of judges to engage in political conduct, the pertinent rules are not sufficiently narrow in scope to serve a compelling state objective and therefore do not withstand strict scrutiny analysis. Relying heavily on
 
 Republican Party of Minn. v White
 
 (536 US 765 [2002]), he argues that the distinction drawn in the rules between the political activities of judicial candidates related to their own campaigns for judicial office and the activities they engage in on behalf of political parties or other candidates is constitutionally flawed. We disagree that
 
 White
 
 compels such a conclusion and hold that, even applying strict scrutiny review, the rules are constitutionally permissible because they are narrowly tailored to further a number of compelling state interests, including preserving the impartiality and independence of our state judiciary and maintaining public confidence in New York State’s court system.
 

 In
 
 White
 
 the Supreme Court struck down a Minnesota judicial conduct provision that prohibited a judicial candidate from announcing “his or her views on disputed legal or political issues” during a judicial campaign
 
 (id.
 
 at 768). The parties having agreed that strict scrutiny was the appropriate standard of review under the First Amendment, the Court applied that standard to determine whether the State of Minnesota had met its burden of establishing that the rule was narrowly tailored to serve a compelling state interest. Although Minnesota had identified compelling interests, the Supreme Court ruled that under a strict scrutiny analysis the “announce clause” was not sufficiently narrow to serve those interests. In so holding, the Court emphasized that statements made by a candidate in furtherance of the candidate’s own campaign constitute core political speech worthy of First Amendment protection. The Court did not declare, however, that judicial candidates must be treated the same as nonjudicial candidates or that their political activity or speech may not legitimately be circumscribed. To the contrary, the Court distinguished
 
 *313
 
 Minnesota’s announce clause from other rules restricting the speech of judicial candidates, taking no position on the validity of other judicial conduct provisions
 
 (see Republican Party of Minn. v White,
 
 536 US at 770, 773 n 5).
 

 We draw the same conclusion reached by the Commission: that
 
 White
 
 is significantly distinguishable from the case before us. Notably,
 
 White
 
 did not involve review of political activity restrictions analogous to those at issue here. Nonetheless, we assume without deciding that strict scrutiny analysis is appropriate to review petitioner’s First Amendment claim. Accordingly, we begin by examining whether the rules petitioner challenges are narrowly tailored to serve a compelling state interest.
 

 We recognize that in jurisdictions where judges are elected, judicial candidates have certain free speech and association rights that are protected under the First Amendment. Nor do we dispute that the right of judicial candidates to communicate to voters is linked to the right of the electorate to make informed choices about how to cast their votes. But the rights of judicial candidates and voters are not the only interests the State must consider. As addressed in
 
 Matter of Watson
 
 (100 NY2d 290 [2003] [decided today]), litigants have a right guaranteed under the Due Process Clause to a fair and impartial magistrate and the State, as the steward of the judicial system, has the obligation to create such a forum and prevent corruption and the appearance of corruption, including political bias or favoritism.
 
 [4]
 

 The importance of these fundamental precepts in maintaining public confidence in the judicial system is firmly established:
 

 “the State has an overriding interest in the integrity and impartiality of the judiciary. There is hardly * * * a higher governmental interest than a State’s interest in the quality of its judiciary. Charged with administering the law, Judges may not actually or appear to make the dispensation of
 
 *314
 
 justice turn on political concerns. The State’s interest is not limited solely to preventing actual corruption through contributor-candidate arrangements. Of equal import is the prevention of the appearance of corruption stemming from public awareness of the opportunities for abuse”
 
 (Matter of Nicholson v State Commn. on Jud. Conduct,
 
 50 NY2d 597, 607-608 [1980] [internal quotation marks and citations omitted]).
 

 Indeed, the interests the State seeks to advance in this case are not unlike those validated in
 
 United States Civ. Serv. Commn. v National Assn. of Letter Carriers
 
 (413 US 548 [1973]).
 
 Letter Carriers
 
 involved a First Amendment challenge to the validity of the Hatch Act, which prohibits federal executive branch employees from engaging in various types of political activities, including holding office in a political party, organizing a political party or club and actively participating in fundraising. The United States Supreme Court upheld the restrictions even though they limited the political activity of federal employees and prohibited them from engaging in conduct otherwise protected by the First Amendment.
 

 The Supreme Court has also upheld limitations on the ability of voters to participate in certain types of political activities, finding that a $1,000 contribution ceiling on the amount of money an individual could contribute to a candidate for federal office survived exacting scrutiny review
 
 (Buckley v Valeo,
 
 424 US 1 [1976] [upholding individual and PAC contribution limits but striking expenditure limits, including those limiting the amount a candidate could contribute to the candidate’s own campaign]). In
 
 Buckley v Valeo,
 
 the Court concluded that the contribution limitation furthered the government’s interest in “the prevention of corruption and the appearance of corruption spawned by the real or imagined coercive influence of large financial contributions on candidates’ positions and on their actions if elected to office”
 
 (id.
 
 at 25). Clearly, the interests the State aims to foster under the rules challenged in this case have been recognized as compelling and have justified the regulation of political activity, even when the limitations have directly affected voters.
 

 Here, petitioner concedes that New York’s interests are compelling but contends that the rules he violated are both under-inclusive and overinclusive. He argues that the rules do not regulate all conduct that should be restricted to assure impartiality and unnecessarily bar particular political activi
 
 *315
 
 ties that, according to petitioner, are not indicative of bias or political corruption. We find petitioner’s analysis unpersuasive because he fails to acknowledge that a number of competing interests are at stake, almost all of a constitutional magnitude. Not only must the State respect the First Amendment rights of judicial candidates and voters but also it must simultaneously ensure that the judicial system is fair and impartial for all litigants, free of the taint of political bias or corruption, or even the appearance of such bias or corruption. In our view, the rules at issue, when viewed in their totality, are narrowly drawn to achieve these goals.
 

 Critically, the rules distinguish between conduct integral to a judicial candidate’s own campaign and activity in support of other candidates or party objectives. Sections 100.5 (A) (2) and 100.5 (A) (3) establish what activity is permitted in a judicial campaign and sections 100.5 (A) (1), 100.5 (A) (4) and 100.5 (A) (5) describe the prohibited political conduct. Judicial candidates may participate in and contribute to their own campaigns during the “window period,” beginning nine months before the primary election or nominating convention
 
 (see
 
 22 NYCRR 100.0 [Q]). Such participation may include attending political gatherings and speaking in support of their own campaigns, appearing in media advertisements and distributing promotional campaign materials supporting their campaign, and purchasing two tickets to and attending politically sponsored dinners and functions during the window period
 
 (see
 
 22 NYCRR 100.5 [A] [2] [i], [ii], [iii], [v]).
 

 In contrast, the rules restrict ancillary political activity, such as participating in other candidates’ campaigns (beyond appearing on a party’s slate of candidates), publicly endorsing other candidates or publicly opposing any candidate other than an opponent for judicial office, making speeches on behalf of political organizations or other candidates, or making contributions to political organizations that support other candidates or general party objectives
 
 (see
 
 22 NYCRR 100.5 [A] [1] [c], [d], [e], [f], [g], [h]). The contribution limitation is intended to ensure that political parties cannot extract contributions from persons seeking nomination for judicial office in exchange for a party endorsement. It achieves this necessary objective by preventing candidates from making contributions in an effort to buy — and parties attempting to sell — judicial nominations. It also diminishes the likelihood that a contribution, innocently made and received, will be perceived by the public as having had such an effect. Needless to say, the State’s interest in
 
 *316
 
 ensuring that judgeships are not — and do not appear to be— “for sale” is beyond compelling. The public would justifiably lose confidence in the court system were it otherwise and, without public confidence, the judicial branch could not function.
 

 The provisions allowing judicial candidates to engage in significant political activity in support of their own campaigns provide candidates a meaningful and realistic opportunity to fulfill their assigned role in the electoral process. Unlike other elected officials, however, judges do not serve particular constituencies but are sworn to apply the law impartially to any litigant appearing before the court. Once elected to the bench, a judge’s role is significantly different from others who take part in the political process and, for this reason, conduct that would be appropriate in other types of campaigns is inappropriate in judicial elections. Precisely because the State has chosen election as one means of selecting judges, there is a heightened risk that the public, including litigants and the bar, might perceive judges as beholden to a particular political leader or party after they assume judicial duties. The political activity rules are carefully designed to alleviate this concern by limiting the degree of involvement of judicial candidates in political activities during the critical time frame when the public’s attention is focused on their activities, without unduly burdening the candidates’ ability to participate in their own campaigns. In sum, sections 100.5 (A) (1) and 100.5 (A) (1) (c), (d), (e), (f), (g) and (h) survive petitioner’s constitutional challenge because they are narrowly constructed to address the interests at stake, including the State’s compelling interest in preventing political bias or corruption, or the appearance of political bias or corruption, in its judiciary.
 

 Here, petitioner paid a substantial sum to a political party without verifying that the payment was used to cover expenditures related to his own campaign and not applied to other candidates’ races or to general party needs. Although he apparently disclosed the payment as required under the Election Law, the fact remains that petitioner issued his personal check in the absence of proof of the nature and amount of the specific expenditures. As petitioner conceded, the payment therefore amounted to an improper contribution. Petitioner also actively campaigned for a legislative candidate by participating in a phone bank and assisted Working Families Party officials at a candidate screening meeting by questioning other judicial and nonjudicial candidates on behalf of the'party.
 
 *317
 
 This conduct, by which petitioner acted as a party volunteer, went beyond what was necessary or integral to his own judicial races. Upon review of the entire record, we conclude that the impermissible political activity, coupled with the intimidating remark petitioner made to an attorney when notified that one of his orders had been vacated, merits our strong disapproval and closely approaches grounds for removal. Nevertheless, in this case we accept the Commission’s determined sanction and impose censure.
 

 Accordingly, the determined sanction of censure should be accepted, without costs.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt, Graffeo and Read concur in per curiam opinion.
 

 Determined sanction accepted, without costs.
 

 [1]
 

 . Petitioner does not challenge the constitutional validity of the rules underlying this charge, all of which require judges to act with impartiality and decorum (see 22 NYCRR 100.1, 100.2 [A]; 100.3 [B] [3], [4]; 700.5 [e]). He concedes that the rebuke of the attorney constituted misconduct and contests only the severity of the sanction.
 

 [2]
 

 . Section 100.5 provides: “A judge or candidate for elective judicial office shall refrain from inappropriate political activity” (22 NYCRR 100.5). The remaining provisions in the section more particularly describe the prohibited conduct, as follows:
 

 “Neither a sitting judge nor a candidate for public election to judicial office shall directly or indirectly engage in any political activity except (i) as otherwise authorized by this section or by law, (ii) to vote and to identify himself or herself as a member of a political party, and (iii) on behalf of measures to improve the law, the legal system or the administration of justice. Prohibited political activity shall include: * * *
 

 “(c) engaging in any partisan political activity, provided that nothing in this section shall prohibit a judge or candidate from participating in his or her own campaign for elective judicial office or shall restrict a non-judge holder of public office in the exercise of the functions of that office;
 

 “(d) participating in any political campaign for any office or permitting his or her name to be used in connection with any activity of a political organization;
 

 “(e) publicly endorsing or publicly opposing (other than by running against) another candidate for public office;
 

 “(f) making speeches on behalf of a political organization or another candidate;
 

 “(g) attending political gatherings;
 

 “(h) soliciting funds for, paying an assessment to, or making a contribution to a political organization or candidate” (22 NYCRR 100.5 [A] [1] [c], [d], [e], m, fe], M).
 

 [3]
 

 . The rules petitioner challenges are subject to exceptions found elsewhere in the rules. For example, section 100.5 (A) (2) lists permissible political activities directly related to a candidate’s campaign for judicial office.
 

 [4]
 

 . The federal government similarly perceives the importance of shielding the federal judicial system from political influence and corruption and the appearance of political influence and corruption and has promulgated judicial conduct provisions that restrict much of the same conduct limited in the rules we address in this case
 
 (compare
 
 Code of Conduct for United States Judges Canon 7 [A] [2], [3], entitled “A Judge Should Refrain From Political Activity”
 
 with
 
 22 NYCRR 100.5 [A] [1] [e], [f], [g], [h]).