*295
 
 OPINION OF THE COURT
 

 Per Curiam.
 

 The Commission on Judicial Conduct determined that petitioner, a City Court judge, should be removed from office
 
 (see
 
 NY Const, art VI, § 22; Judiciary Law § 44), sustaining one charge of misconduct. Upon our plenary review of the facts and circumstances of this case, we find petitioner has engaged in misconduct warranting censure.
 

 In 1999, petitioner took a leave of absence from his employment as an assistant district attorney in the Niagara County District Attorney’s office to run as a candidate for a Lockport City Court judgeship. Petitioner had two opponents in the primary, both incumbent City Court judges. Beginning in April 1999 and continuing until the primary election in September of that year, petitioner made a series of campaign statements that one of his opponents found objectionable. A few days before the primary, the opponent lodged a complaint with the Commission on Judicial Conduct alleging that petitioner’s campaign statements violated the Rules Governing Judicial Conduct. Petitioner defeated his opponents in the primary and won the general election, taking office as City Court judge in January 2000.
 

 The Commission on Judicial Conduct issued a complaint accusing petitioner of one charge of misconduct arising from statements he made during the 1999 campaign. The complaint alleged that petitioner violated section 100.5 (A) (4) (d) (i) of the Rules Governing Judicial Conduct, which prohibits a judge or judicial candidate from “mak[ing] pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office”
 
 (see
 
 22 NYCRR 100.5 [A] [4] [d] [i]). The complaint also charged that petitioner’s statements violated sections 100.1, 100.2 (A), 100.5 (A) (4) (a), 100.5 (A) (4)
 
 *296
 
 (d) (ii) and 100.5 (A) (4) (d) (iii).
 
 [1]
 
 The exhibits to the complaint included a letter petitioner forwarded to law enforcement personnel who resided in the City of Lockport asking them to elect him and “put a real prosecutor on the bench.” Petitioner asserted in the correspondence that “[w]e are in desperate need of a Judge who will work with the police, not against them. We need a judge who will assist our law enforcement officers as they aggressively work towards cleaning up our city streets.” The complaint also referenced three “letters to the editor” petitioner authored that were published in the Lock-port Union-Sun & Journal in which he decried what he viewed as an increase in drug crime in the city. He contended that “Lockport is attracting criminals from Rochester, Niagara Falls and Buffalo to come into our city to peddle their drugs and commit their crimes.” Petitioner stated that, as a prosecutor, he had “sent a message that this type of conduct will not be tolerated in Niagara County” and he urged the voters to elect him “so that the City of Lockport can begin to send this same message.”
 

 In newspaper advertisements, petitioner cited an increase in arrest statistics for various categories of crime, claiming that “arrests tell the story” and stating that he had “proven experience in the war against crime.” Petitioner correlated the increase in arrests with the time period the incumbents were in office, indicating that if elected he would take action they had failed to take to deter crime. These statements echoed sentiments he expressed in the correspondence published in the local newspaper. For instance, in one letter, petitioner wrote: “[m]y opponents have been in office together for the last several years. Arrests have skyrocketed in Lockport recently, even though crime is down countywide, statewide and nationally.”
 

 
 *297
 
 Petitioner was quoted making similar statements in newspaper articles about the race. On one occasion when petitioner and his opponents were asked to respond in writing to questions posed by a reporter, petitioner cited drugs and crime as the main problem in the city and remarked that “the court must remain impartial and evenhanded, but the city must establish a reputation for zero tolerance” and “deter criminals before they come into the city.” He posited that the caseload in City Court was large because “criminals from surrounding communities are flocking into Lockport. Once we gain a reputation for being tough, you’d be surprised how many will go elsewhere, making the caseload much more manageable.” In another newspaper account, petitioner told a reporter that the city “must no longer put up with drug dealers and other violent criminals from Rochester, Buffalo and Niagara Falls, who feel that it is acceptable for them to come into the City of Lock-port and commit crimes.” He stated: “We need a city court judge who will work together with our local police department to help return Lockport to the city it once was” and suggested that a judge could use bail and sentencing to “make it very unattractive for a person to be committing a crime in the City of Lockport.”
 

 In his answer to the Commission complaint and during his testimony at the hearing before a Referee, petitioner admitted that he had written the letters and advertisements and made the statements attributed to him in the newspaper articles. He explained that his intention was to emphasize his experience and qualifications as a prosecutor and his concern over the increase in crime in the City of Lockport.
 

 The Referee issued a report finding that petitioner had engaged in misconduct by violating the sections charged and that petitioner’s statements “created the appearance that he would not be impartial as a judge, would not judge cases on an individual basis or upon the merits, and would be biased against criminal defendants.” Following the Referee’s report petitioner wrote to the Commission and stated, “I now believe that I did, in fact, commit violations of the Rules through my campaign advertisements and related statements.” Petitioner then apologized for his statements.
 

 The matter proceeded to oral argument before the full Commission. Petitioner again acknowledged that he had exercised poor judgment in making the statements during the campaign and expressed remorse. Before the Commission issued its determination, however, the United States Supreme
 
 *298
 
 Court decided
 
 Republican Party of Minn. v White
 
 (536 US 765 [2002]) which invalidated on First Amendment grounds a Minnesota judicial conduct provision that prohibited judicial candidates from announcing their views on disputed legal or political issues. Soon thereafter, this Court held in
 
 Matter of Shanley
 
 (98 NY2d 310 [2002]) that the use of the phrase “law and order candidate” in the context of the Shanley judicial campaign did not constitute misconduct.
 

 In the wake of these decisions, the Commission offered petitioner the opportunity to comment on the recent legal developments. Petitioner’s counsel submitted a memorandum arguing that
 
 White
 
 and
 
 Shanley
 
 “evidence a strong trend toward permitting open speech in judicial campaigns” and militated against the sanction of removal for petitioner’s conduct. Commission counsel responded in a memorandum differentiating the rule at issue in
 
 White
 
 from the New York rules governing judicial candidate campaign speech.
 

 Ultimately the Commission issued a determination sustaining the charge of misconduct based on violations of the cited sections, and concluding that petitioner should be removed from office. The Commission distinguished New York’s rules from the “announce clause” invalidated in
 
 White
 
 and found that petitioner’s statements were not analogous to the campaign statement addressed in
 
 Shanley.
 
 Two Commission members dissented on the issue of sanction only and recommended censure. Petitioner appeals to this Court as of right (see NY Const, art VI, § 22 [a]).
 

 Because our review is plenary (see NY Const, art VI, § 22 [d]), we first determine whether petitioner’s statements violated the Rules Governing Judicial Conduct and constituted misconduct worthy of sanction. Among other restrictions, a judicial candidate is prohibited from “makfing] pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office” (22 NYCRR 100.5 [A] [4] [d] [i]). Needless to say, statements that merely express a viewpoint do not amount to promises of future conduct. On the other hand, candidates need not preface campaign statements with the phrase “I promise” before their remarks may reasonably be interpreted by the public as a pledge to act or rule in a particular way if elected. A candidate’s statements must be reviewed in their totality and in the context of the campaign as a whole to determine whether the candidate has unequivocally articulated a pledge or promise of future conduct or decisionmaking that compromises the faithful and impartial performance of judicial duties.
 

 
 *299
 
 We find that petitioner’s comments in this case, when viewed in light of his comprehensive campaign theme, violate the pledges or promises prohibition in section 100.5 (A) (4) (d) (i). Petitioner explicitly and repeatedly indicated that he intended to “work with” and “assist” police and other law enforcement personnel if elected to judicial office. These statements were not related to administrative concerns, such as holding court in the evening or on weekends, but were directly associated with helping the police carry out their law enforcement functions. Petitioner buttressed his statements with arrest statistics, indicating that if elected he would take action the incumbents had failed to take to deter crime.
 

 Petitioner’s statements not only expressed a bias in favor of the police and against those accused of crimes, but also amounted to a pledge to engage in conduct antithetical to the judicial role because judges do not “assist” other branches of government — they are charged to apply the law impartially to every party appearing in court. Petitioner also singled out for biased treatment a particular class of defendants — those charged with drug offenses who reside outside the City of Lock-port — claiming that, if elected, he would use bail and sentencing to deter these individuals from operating in Lockport.
 

 Petitioner’s statements were not isolated or spontaneous remarks but were repeated throughout his campaign, both in campaign materials he generated and in his written statements to the media. When viewed as a whole, petitioner’s campaign effectively promised that, if elected, he would aid law enforcement rather than apply the law neutrally and impartially in criminal cases.
 

 This case is easily contrasted with
 
 Matter of Shanley
 
 (98 NY2d 310 [2002]). There, the Commission determined that a judicial candidate’s use of the single phrase “law and order candidate” in campaign materials constituted an impermissible pledge or commitment because it promised stern treatment of criminal defendants. We disagreed, finding that the phrase was “widely and indiscriminately used in everyday parlance and election campaigns” and that the Commission had failed to establish that it “carrie [d] a representation that compromises judicial impartiality”
 
 (id.
 
 at 313). In our view, the generic phrase “law and order candidate” cannot be compared with the recurrent statements petitioner made throughout his campaign directed at a particular class of criminal defendants.
 

 Having concluded that petitioner violated the pledges or promises rule, we turn to petitioner’s argument that this provi
 
 *300
 
 sion impermissibly abridges his rights under the First Amendment of the United States Constitution because it circumscribes constitutionally-protected campaign speech. This issue was presented to the Commission
 
 (cf. Matter of Mason,
 
 100 NY2d 56 [2003]).
 
 [2]
 

 In
 
 Republican Party of Minn. v White
 
 (536 US 765 [2002]), the Supreme Court examined whether a Minnesota judicial conduct rule that prohibited a judicial candidate from announcing “his or her views on disputed legal or political issues” during a campaign for judicial office violated the First Amendment of the United States Constitution.
 
 (Id.
 
 at 768.) The parties agreed that strict scrutiny was the appropriate standard of review and the Court employed that standard, assessing whether the announce clause was narrowly tailored to serve a compelling state interest.
 

 Minnesota indicated that its announce clause was intended to further the state’s interest in judicial impartiality and the appearance of judicial impartiality, but did not define what it meant by impartiality. Insofar as that term means a lack of predisposition on an issue, the Court concluded that such an interest was not compelling because avoiding judicial preconceptions on legal issues is neither possible nor desirable. To the extent impartiality refers to judicial open-mindedness, the Court acknowledged that this would be a worthy judicial trait but that the announce clause did not further this interest because, once on the bench, judges in Minnesota are free to announce their views on disputed legal issues, rendering the announce clause fatally overinclusive for this purpose. Finally, if impartiality is equated to a lack of party bias, the Court deemed this a compelling state interest but found that the announce clause was not narrowly tailored to serve this objective because it did not restrict speech for or against parties but only restricted speech articulating positions on issues. Having determined that the announce clause was not narrowly tailored to serve a compelling state interest, the Court concluded the rule violated the First Amendment by unduly restricting judicial candidate speech.
 

 New York’s Rules Governing Judicial Conduct do not include a provision analogous to Minnesota’s “announce clause.” The
 
 *301
 
 pledges or promises clause in this case is significantly different from the announce clause in that it does not prohibit judicial candidates from articulating their views on legal issues. Indeed,
 
 White
 
 itself distinguished the announcements at issue in that case from “pledges or promises,” which are covered by another Minnesota rule
 
 (White,
 
 536 US at 770). Thus,
 
 White
 
 does not compel a particular result here.
 

 We note that the Supreme Court did not decide what level of review was applicable to the First Amendment claim in
 
 White
 
 but applied strict scrutiny because the parties agreed on that standard
 
 (id.
 
 at 774-775). We need not decide the question in this case either because, even assuming strict scrutiny analysis is appropriate, the pledges or promises prohibition set forth in the New York rules meets that exacting standard.
 

 Section 100.5 (A) (4) (d) (i) prohibits a judicial candidate from making “pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office” (22 NYCRR 100.5 [A] [4] [d] [i]). As its literal language suggests, the restriction is not a blanket ban on pledges or promises; a judicial candidate may promise future conduct provided such conduct is not inconsistent with the faithful and impartial performance of judicial duties.
 

 The State has articulated two interests in support of the pledges or promises clause, both related to the preservation of impartiality and the appearance of impartiality in the judicial branch. The Commission and the Attorney General as amicus have defined the term “impartiality,” contending that the rule promotes the State’s interest in preventing party bias and the appearance of party bias, as well as furthering open-mindedness and the appearance of open-mindedness in the state judiciary. Petitioner does not dispute that such interests are compelling — nor could he reasonably do so.
 

 As discussed in
 
 Matter of Raab
 
 (100 NY2d 305 [2003] [decided today]), the Due Process Clause guarantees litigants a fair and impartial magistrate and the State, as steward of the judicial system, has the obligation to create and maintain a system that ensures equal justice and due process. We have described the State’s interest in this regard as “overriding” and have noted that “[t]here is ‘hardly * * * a higher governmental interest than a State’s interest in the quality of its judiciary’ ”
 
 (Matter of Nicholson v State Commn. on Jud. Conduct,
 
 50 NY2d 597, 607 [1980], quoting
 
 Landmark Communications, Inc. v Virginia,
 
 435 US 829, 848 [1978] [Stewart, J., concurring]).
 
 *302
 
 “The ability to be impartial is an indispensable requirement for a judicial officer”
 
 (Matter of Sardino v State Commn. on Jud. Conduct,
 
 58 NY2d 286, 290 [1983]) and “the perception of impartiality is as important as actual impartiality”
 
 (Matter of Duckman,
 
 92 NY2d 141, 153 [1998]). This is so because “Q]udges personify the justice system upon which the public relies to resolve all manner of controversy, civil and criminal”
 
 (Matter of Mazzei,
 
 81 NY2d 568, 571 [1993]). Belatedly, open-mindedness is central to the judicial function for it ensures that each litigant appearing in court has a genuine — as opposed to illusory — opportunity to be heard.
 

 Section 100.5 (A) (4) (d) (i) furthers the State’s interest in preventing actual or apparent party bias and promoting open-mindedness because it prohibits a judicial candidate from making promises that compromise the candidate’s ability to behave impartially, or to be perceived as unbiased and open-minded by the public, once on the bench. Such promises, even if they are not kept once the candidate is elected, damage the judicial system because the newly elected judge will have created a perception that will be difficult to dispel in the public mind. With all the uncertainties inherent in litigation, litigants and the bar are entitled to be free of the additional burden of wondering whether the judge to whom their case is assigned will adjudicate it without bias or prejudice and with a mind that is open enough to allow reasonable consideration of the legal and factual issues presented.
 

 A campaign pledge to favor one group over another if elected has the additional deleterious effect of miseducating voters about the role of the judiciary at a time when their attention is focused on filling judicial vacancies. Judges must apply the law faithfully and impartially — they are not elected to aid particular groups, be it the police, the prosecution or the defense bar. Campaign promises that suggest otherwise gravely risk distorting public perception of the judicial role.
 

 That said, we recognize that the State may not unduly regulate campaign candidate speech because judicial candidates enjoy First Amendment protection and voters are entitled to information about judicial candidates so they can cast their votes intelligently. New York’s pledges or promises clause not only is sufficiently narrow to withstand strict scrutiny analysis but also effectively and appropriately balances the interests of litigants and the rights of judicial candidates and voters.
 

 By its terms, the provision does not ban all “pledges or promises” but only those that compromise the faithful and
 
 *303
 
 impartial performance of the duties of the office. And as our decision in
 
 Shanley
 
 indicates, most statements identifying a point of view will not implicate the “pledges or promises” prohibition. The rule precludes only those statements of intention that single out a party or class of litigants for special treatment, be it favorable or unfavorable, or convey that the candidate will behave in a manner inconsistent with the faithful and impartial performance of judicial duties if elected. Section 100.5 (A) (4) (d) (i) does not suffer from the same infirmity as Minnesota’s announce clause, determined to be fatally underinclusive in part because it restricted announcement of views on legal issues only during a campaign, because New York judges who make such injudicious comments outside the campaign context are also subject to discipline under other rules
 
 (see e.g., Matter of Romano,
 
 93 NY2d 161, 163 [1999];
 
 Matter of Duckman,
 
 92 NY2d at 152;
 
 Matter of Mulroy,
 
 94 NY2d 652 [2000];
 
 Matter of Roberts,
 
 91 NY2d 93, 96 [1997];
 
 Matter of Esworthy,
 
 77 NY2d 280, 282 [1991];
 
 Matter of Sardino,
 
 58 NY2d at 289-290).
 

 We therefore conclude that New York’s pledges or promises clause — essential to maintaining impartiality and the appearance of impartiality in the state judiciary — is sufficiently circumscribed to withstand exacting scrutiny under the First Amendment.
 

 Having rejected petitioner’s constitutional challenge, we address whether removal is the appropriate sanction. “[T]he purpose of judicial disciplinary proceedings is not punishment but the imposition of sanctions where necessary to safeguard the Bench from unfit incumbents”
 
 (Matter of Esworthy,
 
 77 NY2d at 283 [internal quotation marks and citation omitted]). In this case, petitioner expressed remorse and acknowledged before the Commission that he exercised extremely poor judgment in the conduct of his campaign. He attributed his misconduct in part to his inexperience as a candidate, and his failure to enlist aid from people knowledgeable in the conduct of judicial campaigns. While this is no excuse, we find it relevant in weighing the appropriate sanction. We also note that the Commission makes no claim of inappropriate behavior in the performance of petitioner’s judicial duties.
 
 [3]
 

 
 *304
 
 Although petitioner’s transgressions are serious, we are unpersuaded that his continued performance in judicial office presently threatens the proper administration of justice or that he has irredeemably damaged public confidence in his own impartiality or that of the state judiciary as a whole. We determine that the appropriate sanction is censure. Despite the fact that no judge has been removed for campaign misconduct in the past, our decision in this case should not be interpreted to suggest that violation of the campaign rules can never rise to a level warranting removal.
 

 Given our conclusion that the single charge of misconduct in the Commission complaint is sustained because petitioner’s campaign conduct violated section 100.5 (A) (4) (d) (i), we need not determine whether his course of conduct contravened other rules cited by the Commission. In a judicial misconduct proceeding, the sanction is based on the nature and seriousness of the misconduct and its impact on the judge’s fitness for judicial office. On this record, even if we were to find that petitioner’s conduct also violated other rules, such as sections 100.5 (A) (4) (d) (ii) and 100.5 (A) (4) (d) (iii), the appropriate sanction would still be censure. And the sanction would remain censure if we were to agree with petitioner’s argument that the other rules cited by the Commission violated the First Amendment. Thus, because any conclusion we might reach as to the application or constitutionality of other rules would have no effect on the outcome of this appeal, we have no occasion to address them.
 

 Accordingly, the determined sanction is rejected, without costs, and the sanction of censure is imposed.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt, Graffeo and Read concur in per curiam opinion.
 

 Determined sanction rejected, without costs, and the sanction of censure imposed.
 

 [1]
 

 . These sections of the Rules Governing Judicial Conduct require the following: section 100.1 — a judge should establish, maintain and enforce “high standards of conduct;” section 100.2 (A) — a judge should “respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary;” section 100.5 (A) (4) (a) — a judge or judicial candidate “shall maintain the dignity appropriate to judicial office and act in a manner consistent with the integrity and independence of the judiciary;” section 100.5 (A) (4) (d) (ii) — a judge or judicial candidate shall not “make statements that commit or appear to commit” the judge or candidate with respect to cases or controversies; and section 100.5 (A) (4) (d) (iii) — the judge or candidate shall not knowingly make false statements or misrepresent the facts concerning the candidate or the opponent.
 

 [2]
 

 . Petitioner’s contentions that the pledges or promises rule is “void for vagueness” under the Due Process Clause and offends the “free expression” provision of the New York Constitution were not presented to the Commission.
 

 [3]
 

 . Petitioner appeared before the full Commission in May 2002 and had, by that time, been fulfilling his judicial duties for more than two years. During that time frame, despite the ongoing investigation, no additional charges were proffered by Commission counsel.