351 F.3d 65
 Thomas J. SPARGO, Jane McNally and Peter Kermani, Plaintiffs-Appellees-Cross-Appellants,
v.
NEW YORK STATE COMMISSION ON JUDICIAL CONDUCT, Gerald Stern, individually and as Administrator of the State Commission on Judicial Conduct and Henry T. Berger, individually and as Chairperson of the New York State Commission on Judicial Conduct, Defendants-Appellants-Cross-Appellees.
 No. 03-7250.
 No. 03-7289.
 United States Court of Appeals, Second Circuit.
 Argued: September 29, 2003.
 Decided: December 9, 2003.
 
 DAVID F. KUNZ, DeGraff, Foy, Kunz & Devine, LLP (George J. Szary, on the brief), Albany, NY, for Plaintiffs-Appellees-Cross-Appellants.
 CAITLIN J. HALLIGAN, Solicitor General, (Eliot Spitzer, Attorney General of the State of New York, Robert H. Easton, and Edward Lindner, Assistant Solicitors General, of counsel), New York, NY, for Defendants-Appellants-Cross-Appellees.
 Peter Vollmer, Vollmer & Tanck, LLP, Jericho, NY, for Amicus Curiae The Constitution Project's Courts Initiative.
 Deborah Goldberg and J.J. Gass, Brennan Center for Justice at NYU School of Law, New York, NY, (Victor A. Kovner, Davis Wright Tremaine LLP, of counsel), for Amicus Curiae Brennan Center for Justice at NYU School of Law.
 Alfred P. Carlton, American Bar Association, Chicago, IL, (K. Jane Fankhanel, W. Wendell Hall, and Warren S. Huang, of counsel), for Amicus Curiae American Bar Association.
 Steven C. Krane, Proskauer Rose LLP, New York, NY, for Amici Curiae New York State Bar Association, Suffolk County Bar Association, and Asian American Bar Association.
 Daniel Murdock and Joan Salzmann, Association of the Bar of the City of New York, New York, NY, (Scott A. Rosenberg, Kirsten E. Gillibrand, and Robert Newman, of counsel), for Amicus Curiae The Association of the Bar of the City of New York.
 Before: MINER, CALABRESI, and STRAUB, Circuit Judges.
 STRAUB, Circuit Judge.
 
 
 1
 Plaintiffs, Thomas J. Spargo ("Spargo"), an elected New York state judge, and two of his political supporters, Jane McNally ("McNally") and Peter Kermani ("Kermani"), bring First Amendment and Equal Protection challenges to three specific New York rules of judicial conduct:[1] (1) 22 N.Y.C.R.R. § 100.1 — which directs judges to maintain "high standards of conduct" to preserve "the integrity and independence of the judiciary;" (2) 22 N.Y.C.R.R. § 100.2(A) — which instructs judges to avoid the appearance of impropriety by "act[ing] at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary;" and (3) 22 N.Y.C.R.R. §§ 100.5(A)(1)(c)-(g) and 100.5(A)(4)(a) — which prohibit incumbent judges and judicial candidates from engaging in partisan political activities that are unrelated to their own campaign for judicial office and which require all judicial candidates to "maintain the dignity appropriate to judicial office."
 
 
 2
 After the New York State Commission on Judicial Conduct ("Commission"), the official agency responsible for enforcing New York's judicial conduct rules,[2] see N.Y. Const. art. VI § 22, charged Spargo with five counts of judicial misconduct, plaintiffs filed suit under 42 U.S.C. § 1983, alleging that the judicial conduct rules at issue violated their First Amendment and Equal Protection rights and seeking to enjoin the Commission from proceeding with the pending disciplinary proceedings against Spargo or otherwise enforcing the challenged rules. Relying on the Supreme Court's decision in Republican Party of Minnesota v. White, 536 U.S. 765, 768, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (concluding that a Minnesota canon of judicial conduct that prohibited judicial candidates from announcing their views "on disputed legal or political issues" violated the First Amendment as a restriction on core political speech), the United States District Court for the Northern District of New York (David N. Hurd, Judge) declared 22 N.Y.C.R.R. §§ 100.1, 100.2(A), 100.5(A)(1)(c)-(g) and 100.5(A)(4)(a) facially unconstitutional and permanently enjoined defendants from enforcing the challenged provisions. See Spargo v. N.Y. State Comm'n on Judicial Conduct, 244 F.Supp.2d 72, 92 (N.D.N.Y.2003).
 
 
 3
 On appeal, defendants and amici curiae urge us to reverse the District Court on the merits, arguing that the challenged judicial conduct rules are narrowly tailored to serve the compelling state interest in preserving the reality as well as the appearance of judicial independence and impartiality. However, because state disciplinary proceedings were pending against Spargo at the time the federal suit was filed, this case raises the threshold question of whether the District Court should have abstained from exercising jurisdiction over the plaintiffs' suit in deference to the ongoing disciplinary proceeding. See generally Younger v. Harris, 401 U.S. 37, 44-45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (cautioning that federal courts should generally refrain from enjoining pending state court proceedings). Defendants accordingly focus their arguments on the question of who should have the first opportunity to decide the plaintiffs' constitutional claims, arguing that the pending state disciplinary proceeding provides Spargo with a fully adequate forum to raise his constitutional challenges and that principles of federalism and comity mandate that the District Court abstain from deciding Spargo's claims and the interrelated claims of co-plaintiffs McNally and Kermani.
 
 
 4
 Citing concerns as to whether Spargo could seek mandatory review of the Commission's decision before the New York Court of Appeals, the District Court declined to abstain from exercising jurisdiction over Spargo's claims under Younger. See Spargo, 244 F.Supp.2d at 83-85. The District Court further found no basis to abstain from hearing the claims of McNally and Kermani, as neither was a party to the pending disciplinary proceeding against Spargo. See id. at 82. As we explain more fully below, because the New York Court of Appeals has subsequently confirmed that its review of the Commission's disciplinary decisions is mandatory, see In re Raab, 100 N.Y.2d 305, 763 N.Y.S.2d 213, 215, 793 N.E.2d 1287 (2003) (per curiam); In re Watson, 100 N.Y.2d 290, 763 N.Y.S.2d 219, 223, 794 N.E.2d 1 (2003) (per curiam), erasing any doubt as to Spargo's ability to seek judicial review of his constitutional claims, and because the claims of all three plaintiffs are inextricably intertwined, we hold that proper deference to New York's paramount interest in regulating its own judicial system mandates the exercise of Younger abstention over plaintiffs' claims. Accordingly, we vacate the judgment and injunction of the District Court and remand with instruction to the District Court to abstain from exercising jurisdiction over the plaintiffs' action.
 
 Background
 
 5
 This case arises from an investigation involving plaintiff Thomas J. Spargo's potential violation of several judicial conduct rules. The Commission initiated the investigation into Spargo's campaign conduct and political activity in December 2000 while Spargo was serving as an elected Town Justice for the Town of Berne in Albany County, New York. While the investigation was pending, Spargo ran successfully for the position of Justice of the Supreme Court in the Third Judicial District of New York, the position which he currently holds. Eventually the Commission's investigation expanded to include allegations that Spargo authorized inappropriate payments of $5,000 to two political supporters.[3]
 
 
 6
 On January 25, 2002, the Commission served Spargo with a formal written complaint, charging Spargo with four counts of judicial misconduct. Charge I alleges that Spargo "failed to observe high standards of conduct ... failed to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary... [and] failed to maintain the dignity appropriate to judicial office," in violation of 22 N.Y.C.R.R. §§ 100.1, 100.2(A), and 100.5(A)(4)(a), by offering items of value such as cider and donuts to induce voters to vote for him during his campaign for Town Justice. Charge II alleges that Spargo "failed to avoid impropriety and the appearance of impropriety and failed to act ... in a manner that promotes public confidence in the integrity and impartiality of the judiciary," in violation of 22 N.Y.C.R.R. §§ 100.1 and 100.2(A), by accepting the Albany County District Attorney-Elect as a client in connection with the contested election for District Attorney, notwithstanding the fact that the District Attorney's office regularly appeared in criminal cases before Spargo as a sitting Town Justice. Charge II also alleges that Spargo violated N.Y.C.R.R. §§ 100.1 and 100.2(A) by presiding over criminal cases prosecuted by the Albany County District Attorney's Office without disclosing to defense counsel that Spargo had previously represented the District Attorney and that the District Attorney's campaign committee still owed Spargo $10,000 in legal fees.
 
 
 7
 Charges III and IV allege that Spargo violated 22 N.Y.C.R.R. §§ 100.5(A)(1)'s prohibitions on partisan political activity by: (1) attending "governmental sessions for the recount of presidential votes" during the November 2000 Florida recount as an observer for the Republican Party and the Bush/Cheney presidential campaign; (2) "participat[ing] in a loud and obstructive demonstration against the recount process outside the offices of the Miami-Dade County Board of Elections" in an attempt to disrupt the recount process; and (3) serving as the keynote speaker at the 39th Annual Monroe County Conservative Party Dinner, a fundraising event for the Conservative Party.
 
 
 8
 On May 12, 2002, Spargo was served with a supplemental complaint charging him with additional violations of 22 N.Y.C.R.R. §§ 100.1, 100.2, and 100.5(A)(4)(a) for allegedly authorizing improper payments to two consultants involved in his campaign for Supreme Court Justice. The supplemental complaint charges that Spargo authorized his judicial campaign committee to pay McNally $5,000, although McNally "had agreed to volunteer her services [to Spargo's election campaign] without pay," for "consulting services" purportedly rendered on October 30, 2001, the same day that McNally nominated Spargo as the Democratic Party's candidate for Supreme Court Justice. Similarly, the supplemental complaint alleges that Spargo authorized a second $5,000 payment from his campaign committee "to Empire Strategy Consultants, the principal of which is Thomas Connolly, the Rensselaer County Independence Party Chairman and a delegate to the Independence Party Judicial Nominating Convention, after Mr. Connolly supported and worked for [Spargo's] nomination as the Independence Party candidate on October 8, 2001, notwithstanding that neither [Spargo] nor [Spargo's] campaign was legally obligated to pay any money to Mr. Connolly or to Empire Strategy Consultants."
 
 
 9
 In his answers to the Commission's complaints, Spargo asserted as an affirmative defense that his campaign activities were constitutionally protected and that the judicial conduct rules that he was charged with violating were overly broad and unduly vague in violation of the First Amendment as well as the Constitution of the State of New York. On July 12, 2002, the Commission designated a referee to conduct a hearing and prepare a report on the misconduct charges.[4] See N.Y. Jud. Law § 43(2) (authorizing the Commission to appoint a referee to conduct hearings on judicial misconduct complaints). The hearing was scheduled for October 21-24, 2002. However, shortly before the hearing was to commence, Spargo unsuccessfully requested an adjournment.
 
 
 10
 On October 17, 2002, immediately following the denial of the adjournment and only four days before the disciplinary hearing was scheduled to begin, plaintiffs filed suit in federal court bringing facial and as-applied constitutional challenges to 22 N.Y.C.R.R. §§ 100.1, 100.2(A), 100.5(A)(1)(c)-(g) and 100.5(A)(4)(a). In their complaint, plaintiffs assert that "[t]he purpose of this action is to obtain declaratory and injunctive relief," declaring the challenged rules of judicial conduct unconstitutional, "in violation of the First and Fourteenth Amendment[s] to the United States Constitution and Article I, §§ 8, 9, and 11 of the New York State Constitution." Plaintiffs also sought to obtain a permanent injunction barring defendants from pursuing the pending disciplinary charges against Spargo.
 
 
 11
 In support of their independent First Amendment claims, McNally and Kermani both allege that they have been adversely affected by the defendants' actions in pursuing judicial misconduct charges against Spargo. McNally alleges that "the threat of sanctions against Spargo" and other judicial candidates whom McNally may support in the future "impedes her freedom of speech, including her ability and desire to nominate and show support for particular candidates as a delegate to future Democratic Judicial Nominating Conventions." Similarly, Kermani contends that he is "adversely affected because, as a member and chairman of the Republican Party, he is restrained from associating with Spargo out of concern that [the] association would adversely impact Spargo." Kermani also alleges that he "has declined to invite Spargo to address [the Republican Party], despite a desire to do so, out of concern that such activity would result in [additional] charges being brought against Spargo."
 
 
 12
 In expedited proceedings before the District Court, plaintiffs obtained a temporary restraining order barring the Commission from taking any further disciplinary action against Spargo. Deeming the matters in dispute to be strictly questions of law, the District Court consolidated the preliminary injunction hearing with a trial on the merits of plaintiffs' First Amendment and Equal Protection claims. On February 20, 2003, the District Court issued its order and decision, declaring the challenged judicial conduct rules facially unconstitutional and permanently enjoining defendants from enforcing the challenged rules. See Spargo, 244 F.Supp.2d at 92.
 
 
 13
 In reaching its decision, the District Court acknowledged that "[t]here is `a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.'" Id. at 82 (quoting Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). However, the District Court determined that Younger abstention did not extend to McNally's and Kermani's constitutional claims as neither was a party to the pending disciplinary proceeding against Spargo, or otherwise subject to the Commission's authority, and McNally and Kermani would therefore have no opportunity to raise their claims in Spargo's disciplinary proceeding. See id. at 82-83. As for Spargo himself, the District Court determined that while the other prerequisites for Younger abstention were present, Younger did not apply because the pending disciplinary proceedings failed to provide Spargo with an adequate opportunity to raise his constitutional challenges. See id. at 85.
 
 
 14
 First, the District Court expressed concern that Spargo's constitutional claims would go unheard if the pending misconduct charges were found to be unsubstantiated or if the Commission declined to pursue the charges for other reasons. See id. at 83. Second, the District Court noted that it was unclear under state law, see N.Y. Jud. Law § 44(7),[5] whether Spargo could seek mandatory review of the Commission's disciplinary determination before the New York Court of Appeals or whether such review was discretionary. See Spargo, 244 F.Supp.2d at 83-84.[6] Third, the District Court questioned whether "[c]onsideration of the validity of the [judicial conduct] Rules themselves is outside the scope of the Commission's authority despite any constitutional defense" that might be raised by a judge charged with violating the rules. Id. at 84. Finally, the District Court observed that the New York Court of Appeals would review "the [C]ommission's findings of fact and conclusions of law" based "on the record of the proceedings" before the Commission. Id. (quoting N.Y. Jud. Law § 44(9) with emphasis omitted). Noting that a disciplinary hearing is not the equivalent of a full trial, where the rules of evidence apply, and that the Commission need not provide extensive analysis in rejecting proffered constitutional defenses, the District Court worried that the resulting administrative record would be too "spare" and "scant" to permit adequate appellate review. See id.
 
 
 15
 On the merits of plaintiffs' claims, the District Court agreed that the judicial conduct rules restricting partisan political activity, 22 N.Y.C.R.R. §§ 100.5(A)(1)(c)-(g) and 100.5(A)(4)(a), imposed a prior restraint on protected speech. See id. at 86-87. Relying heavily on the Supreme Court's decision in Republican Party of Minnesota v. White, 536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002), the District Court concluded that the rules were not narrowly tailored to serve the state's interest in maintaining and promoting an independent judiciary.[7] See Spargo, 244 F.Supp.2d at 86-89. Although New York does not impose the same restrictions on judicial candidates,[8] the District Court reasoned that the challenged provisions of 22 N.Y.C.R.R. § 100.5 imposed even broader restrictions, "[e]ssentially... prohibit[ing] judges and judicial candidates from [engaging in] any political activity except their own judicial campaign." Id. at 88. The District Court further rejected defendants' argument that the political activity restrictions are narrowly tailored to advance the compelling state interest in preserving judicial independence, reasoning that judicial candidates may have been active in politics prior to seeking judicial office, and "[t]here is no support for the proposition that one-time participation in political activity," which the rules do not address, "impedes the making of independent judgments any less than current participation in some political activity." Id. The District Court also reasoned that judicial bias could be effectively remedied through voluntary recusal instead of broad restrictions on political speech and activity. See id. at 88-89.
 
 
 16
 As for 22 N.Y.C.R.R. §§ 100.1 and 100.2(A), which affirmatively direct judges and judicial candidates to observe "high standards of conduct" and act "in a manner that promotes public confidence in the integrity and impartiality of the judiciary," the District Court held that both provisions were void for vagueness, because the provisions failed to give adequate notice of the specific activity prohibited and consequently were likely to chill protected activity. See id. at 90-91. Finally, although the District Court ruled for plaintiffs on their First Amendment challenge, it rejected plaintiffs' parallel equal protection claim, explaining that New York could impose special restrictions on the speech of judicial candidates, because "[j]udicial candidates and candidates for other public office are not similarly situated." Id. at 86.
 
 
 17
 The parties now appeal. Defendants argue that: (1) the District Court should have abstained from hearing plaintiffs' suit in deference to the pending disciplinary proceeding against Spargo, (2) plaintiffs McNally and Kermani lack Article III standing to bring independent constitutional claims because their allegations of injury are too conclusory, and (3) the District Court erred in analyzing the merits of plaintiffs' First Amendment challenge. Plaintiffs have filed a cross-appeal on the denial of their equal protection claim.
 
 
 18
 While the appeal was pending,[9] the New York Court of Appeals issued two decisions that erased any doubt as to the mandatory nature of its review of Commission disciplinary decisions. See Raab, 763 N.Y.S.2d at 215, 793 N.E.2d 1287 (noting that the Commission's "determination is reviewable as of right"); Watson, 763 N.Y.S.2d at 223, 794 N.E.2d 1 (stating that "[p]etitioner appeals to this Court as of right"). Moreover, Raab and Watson confirm that judges and judicial candidates subject to disciplinary proceedings have the opportunity to raise First Amendment challenges before the Court of Appeals. See Raab, 763 N.Y.S.2d at 216-19, 793 N.E.2d 1287 (distinguishing the Supreme Court's decision in White and concluding that the restrictions on partisan political activity contained in 22 N.Y.C.R.R. § 100.5(A)(1)(c)-(h) are narrowly tailored to address the state's compelling interests in preventing political bias and corruption and the appearance of such corruption); Watson, 763 N.Y.S.2d at 224-26, 794 N.E.2d 1 (considering but rejecting First Amendment challenge to 22 N.Y.C.R.R. § 100.5(A)(4)(d)(i)'s ban on the making of "pledges or promises" by judicial candidates).
 
 
 19
 We conclude that in declining to abstain under Younger the District Court placed too much weight on the uncertainty of state procedures for raising constitutional claims in disciplinary proceedings. In addition, we recognize that the Court of Appeals has subsequently clarified the scope of available review of constitutional challenges to the judicial conduct rules. While the opinions in Raab and Watson were not available at the time the District Court issued its decision, they now make explicit that plaintiffs have a sufficient opportunity to raise their constitutional claims during the course of state proceedings, and this precludes the District Court from exercising jurisdiction over a parallel action that seeks to disrupt the state proceeding. Finally, we find that abstention applies to the derivative claims of plaintiffs McNally and Kermani, as their First Amendment interests are inextricably intertwined with the First Amendment interests asserted by Spargo.
 
 
 20
 In deciding this case on abstention grounds, we are sensitive to the importance of the free speech issues raised on appeal and emphasize that our decision should not be read as revealing any view on the merits of plaintiffs' claims. As amici curiae point out, all fifty states have adopted codes of judicial conduct, containing provisions identical, or substantially similar, to the judicial conduct rules challenged in this case. Moreover, like New York, see N.Y. Const. art. VI §§ 6, 10, 12-13, 15-17, the majority of states in this country have adopted a system of judicial elections, raising potential concerns about how broadly the speech of elected judicial and judicial candidates may be restricted. See White, 536 U.S. at 790, 122 S.Ct. 2528 (O'Connor, J., concurring). Accordingly, any ruling on the merits of plaintiffs' First Amendment challenge may have widespread influence and impact. That being the case, our ruling does not deny plaintiffs the opportunity to raise their constitutional challenge; we simply direct plaintiffs to the alternative state forum where proceedings have already begun. It is to the State Commission on Judicial Conduct and the New York Court of Appeals that plaintiffs must make their arguments, and to which other interested parties must look, for further guidance and development of the law in the context of this controversy. Beyond that, the parties have available whatever review the Supreme Court opts to offer them. Cf. Guido Calabresi, Federal and State Courts: Restoring a Workable Balance, 78 N.Y.U.L. REV. 1293, 1303 (2003) (Madison Lecture).
 
 Discussion
 
 21
 As a threshold matter, because defendants raise both standing and abstention concerns, and because we have an independent obligation to ensure that standing exists, see N.Y. Pub. Interest Research Group v. Whitman, 321 F.3d 316, 324-25 (2d Cir.2003), we must determine whether we may decide the case on Younger grounds without confirming the existence of constitutional standing. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), directs federal courts to resolve questions of Article III jurisdiction before reaching the merits of a plaintiff's claim. While dismissal or a stay of claims is mandatory when the requirements for Younger abstention are satisfied, see Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 197 (2d Cir.2002), Younger is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity. See, e.g., Benavidez v. Eu, 34 F.3d 825, 829 (9th Cir.1994) ("Younger abstention is not jurisdictional, but reflects a court's prudential decision not to exercise jurisdiction which it in fact possesses.") (emphasis in original); Schachter v. Whalen, 581 F.2d 35, 36 n. 1 (2d Cir.1978) (per curiam) ("Younger abstention goes to the exercise of equity jurisdiction, not to the jurisdiction of the federal district court as such to hear the case.").
 
 
 22
 Despite the prudential nature of the abstention inquiry, we may still proceed to decide a case under Younger without addressing the plaintiffs' constitutional standing to bring suit. As the Supreme Court clarified in Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584-85, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999), Steel Co. does not mandate a strict "sequencing of jurisdictional issues," as it does not violate separation of powers principles to dismiss an action on a non-merits ground before finding subject-matter jurisdiction. Thus, while Steel Co. may bar the exercise of hypothetical jurisdiction to dismiss on the merits of a claim,[10] Ruhrgas reaffirms the inherent flexibility that federal courts exercise "to choose among threshold grounds" for disposing of a case without reaching the merits. Id. at 585, 119 S.Ct. 1563. Accordingly, we may decide that abstention is proper under Younger without deciding whether plaintiffs have demonstrated Article III injury-in-fact. See id. (citing Ellis v. Dyson, 421 U.S. 426, 433-34, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975)).
 
 A. Younger Abstention
 
 23
 We review the District Court's Younger analysis de novo, see Diamond "D" Constr., 282 F.3d at 197, and begin by analyzing the underlying principles and policies that dictate deference towards pending state proceedings. As the Supreme Court emphasized in Younger v. Harris, 401 U.S. 37, 43-45, 91 S.Ct. 746 (1971), federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings. This principle of abstention is grounded in interrelated principles of comity and federalism. See Schlagler v. Phillips, 166 F.3d 439, 442 (2d Cir.1999). Both considerations require federal courts to be "cognizant that `the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" Younger, 401 U.S. at 44. "Our Federalism" in its ideal form, as the Supreme Court explained in Younger, strives towards "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Id. In recognition of this balance of interests, Younger generally prohibits courts from "taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings" so as to avoid unnecessary friction. Diamond "D" Constr., 282 F.3d at 198. Giving states "the first opportunity... to correct their own mistakes" when there is an ongoing state proceeding serves the vital purpose of "reaffirm[ing] the competence of the state courts," and acknowledging the dignity of states as co-equal sovereigns in our federal system. Id. at 200.
 
 
 24
 Younger itself involved a First Amendment challenge to a pending state criminal proceeding. However, the same comity and federalism concerns are equally applicable to state administrative proceedings "in which important state interests are vindicated." Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc., 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). Accordingly, Younger abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims.[11] See Diamond "D" Constr., 282 F.3d at 198.
 
 
 25
 In this case, there is no dispute that the first two requirements for Younger abstention are satisfied. Plaintiffs filed suit after the Commission initiated a disciplinary proceeding against Spargo, a proceeding that undeniably implicates a vital state interest. Indeed, few interests can be considered more central than a state's interest in regulating its own judicial system. See Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 848, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) (Stewart, J., concurring in the judgment) (emphasizing that "[t]here could hardly be a higher governmental interest than a State's interest in the quality of its judiciary"); cf. Pincham v. Ill. Judicial Inquiry Bd., 872 F.2d 1341, 1347 (7th Cir.) (recognizing that the state has a vital interest in "preserving a fair and impartial judiciary"), cert. denied, 493 U.S. 975, 110 S.Ct. 497, 107 L.Ed.2d 501 (1989); Anonymous v. Ass'n of the Bar of the City of New York, 515 F.2d 427, 430 (2d Cir.) (noting that "[i]t would appear axiomatic that the effective functioning of any court depends upon its ability to command respect not only from those licensed to practice before it but also from the public at large"), cert. denied, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975).
 
 
 26
 Plaintiffs primarily argue that abstention is inappropriate, because there is no opportunity for Spargo to meaningfully pursue his constitutional claims in the pending disciplinary proceeding, and because McNally and Kermani are not party to any pending Commission proceeding or other state action. In analyzing plaintiffs' arguments against abstention, we note that the underlying facts and claims in this case are strikingly similar to the facts and issues raised in Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the seminal Supreme Court case that first clearly extended Younger to state administrative proceedings. In Middlesex, plaintiffs brought a federal action, alleging that several attorney disciplinary rules promulgated by the New Jersey Supreme Court violated the First Amendment. Prior to the initiation of the federal action, one of the plaintiffs, Lennox Hinds ("Hinds"), a practicing New Jersey attorney, was formally charged with violating the disciplinary rules by a county ethics committee after he allegedly made statements disparaging the judicial system during the course of a criminal trial. See id. at 427-28, 102 S.Ct. 2515. Instead of answering the charges, Hinds filed suit in federal court along with other plaintiff legal organizations, claiming that the New Jersey disciplinary rules violated the First Amendment and were facially overbroad and vague. See id. at 429, 102 S.Ct. 2515. The district court dismissed the suit under Younger, but a divided panel of the Third Circuit reversed, concluding that abstention was improper because the state disciplinary proceedings did not provide plaintiffs with a meaningful opportunity to adjudicate their constitutional claims. See Garden State Bar Ass'n, 643 F.2d at 121.
 
 
 27
 In rejecting the application of Younger, the Third Circuit focused on the fact that the state disciplinary proceedings were nonadjudicative in nature, and primarily "designed to elicit facts, not legal arguments," id. at 126, and concluded that even if Hinds could raise a constitutional challenge during his pending disciplinary proceedings, New Jersey:
 
 
 28
 rules [made] no provision for the filing of an opinion by the District Ethics Committee or the Disciplinary Review Board [and hence] ... [t]he very privacy of the proceeding militate[d] against a meaningful constitutional adjudication, since the determination [would] not provide any remedy against the chill which the rules and the filing of charges allegedly created in the minds of other members of the New Jersey bar.
 
 
 29
 Id. "On petition for rehearing petitioner attached an affidavit from the Clerk of the New Jersey Supreme Court which stated that the New Jersey Supreme Court would directly consider Hinds' constitutional challenges and that the court would [also] consider whether such a procedure should be made explicit in the Supreme Court rules." Middlesex County Ethics Comm., 457 U.S. at 430, 102 S.Ct. 2515. However, the Third Circuit panel declined to alter its original decision, reasoning that it was not established that Hinds could have obtained such judicial review when the federal complaint was filed, and that, in any event, such discretionary action by the New Jersey Supreme Court was not sufficient to trigger mandatory abstention. See Garden State Bar Ass'n v. Middlesex County Ethics Comm., 651 F.2d 154, 156-57 (3d Cir.1981).
 
 
 30
 The Supreme Court reversed, noting that the importance of the state interest in "maintaining and assuring the professional conduct of the attorneys it licenses ... calls Younger abstention into play," and concluding that "[s]o long as the constitutional claims of [plaintiffs] can be determined in the state proceedings ... the federal courts should abstain." Middlesex County Ethics Comm., 457 U.S. at 434-35, 102 S.Ct. 2515. The Supreme Court's decision further emphasized that in conducting the Younger inquiry, considerations of comity "preclude[] any presumption that the state courts will not safeguard federal constitutional rights." See id. at 431, 102 S.Ct. 2515. Noting that abstention is based on the fundamental principle that parties should assert any available constitutional defenses in state proceedings unless it is plainly apparent that they are barred from raising such constitutional claims, the Supreme Court placed the burden of establishing the inadequacy of state proceedings squarely on the party seeking to avoid abstention. See id. at 435-36, 102 S.Ct. 2515.
 
 
 31
 In addition, while the Supreme Court in Middlesex acknowledged that whether Hinds could seek judicial review of his constitutional claims during the course of state proceedings was initially unclear, the Court also recognized that the New Jersey Supreme Court had subsequently considered Hinds's claims sua sponte and formally amended its rules to permit interlocutory review of constitutional challenges to attorney disciplinary proceedings. See id. at 427, 436, 102 S.Ct. 2515. Concluding that "[t]here [was] no reason for the federal courts to ignore ... subsequent development[s]" demonstrating that Hinds had had an opportunity to raise his constitutional claims during the course of state proceedings, the Supreme Court held that the mandatory abstention applied to Hinds's First Amendment claims. See id. at 436-37, 102 S.Ct. 2515.
 
 
 32
 B. Adequate Opportunity to Raise Constitutional Claims in State Proceedings
 
 
 33
 Here, as in Middlesex, abstention largely turns on the question of whether Spargo has an adequate opportunity to raise his constitutional claims in the pending state proceeding. On appeal, despite the intervening decisions by the New York Court of Appeals, plaintiffs still contend that state law does not clearly grant the Commission jurisdiction to consider constitutional arguments or provide for mandatory review of the Commission's disciplinary decisions by the Court of Appeals. Plaintiffs also argue that abstention would still be unwarranted, even if the Commission were willing to consider Spargo's constitutional claims, because: (1) the misconduct charges against Spargo could be dismissed on alternate grounds, leaving the constitutionality of the challenged judicial conduct rules still in question, (2) the Commission may choose to summarily reject Spargo's constitutional claims, effectively limiting Spargo's ability to seek meaningful review before the Court of Appeals, and (3) the Commission's decision will remain confidential, and thus have limited precedential value even if Spargo prevails on his constitutional challenges.
 
 
 34
 None of these arguments have any merit given Middlesex's unequivocal statement that abstention is appropriate where the plaintiff has an "opportunity to raise and have timely decided by a competent state tribunal" the constitutional claims at issue in the federal suit. Middlesex County Ethics Comm., 457 U.S. at 437, 102 S.Ct. 2515 (quoting Gibson v. Berryhill, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973)); see also Juidice v. Vail, 430 U.S. 327, 337, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (reasoning that where it is "abundantly clear that appellees had an opportunity to present their federal claims in the state proceedings ... [n]o more is required to invoke Younger abstention"). More importantly, under Younger, any uncertainties as to the scope of state proceedings or the availability of state remedies are generally resolved in favor of abstention. See Butler v. Ala. Judicial Inquiry Comm'n, 261 F.3d 1154, 1159 (11th Cir.2001) (concluding that abstention was required even without authoritative guidance as to whether plaintiff could raise his First Amendment claims in the pending state judicial discipline proceeding).
 
 
 35
 Accordingly, to avoid abstention, plaintiffs must demonstrate that state law bars the effective consideration of their constitutional claims. See Middlesex County Ethics Comm., 457 U.S. at 432, 102 S.Ct. 2515 (where pending administrative proceedings implicate important state interests, "a federal court should abstain `unless state law clearly bars the interposition of the constitutional claims'") (quoting Moore v. Sims, 442 U.S. 415, 426, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)); Ohio Civil Rights Comm'n, 477 U.S. at 629, 106 S.Ct. 2718 (holding that abstention was mandatory where plaintiff could cite no state authority preventing judicial review of his constitutional claims); Kirschner v. Klemons, 225 F.3d 227, 235 (2d Cir.2000) (to establish the inadequacy of state remedies, the plaintiff must "show[] that the State's laws, procedures, or practices would prevent his effective interposition of his federal contentions"). In this case, the District Court declined to abstain, noting that defendants had failed to cite any cases in which the Commission or the Court of Appeals had ever addressed a constitutional challenge to the judicial conduct rules. See Spargo, 244 F.Supp.2d at 85. However, under Younger, it is the plaintiff's burden to demonstrate that state remedies are inadequate, and defendants need not establish that state law definitively permits the interposition of constitutional claims.
 
 
 36
 In opposition to abstention, the plaintiffs have merely pointed to potential ambiguities in state statutes and regulations. But in applying Younger, federal courts may not "assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Even if we accept that no other constitutional challenges to the New York judicial conduct rules have ever been addressed, "in the history of state proceedings" as the District Court found, see Spargo, 244 F.Supp.2d at 85, plaintiffs have not pointed to any state law or firmly established state practice that would effectively bar Spargo from asserting constitutional defenses to the Commission's disciplinary charges.[12]
 
 
 37
 In addition, as in Middlesex, any doubts about the Commission's willingness to consider constitutional challenges or the availability of judicial review have been resolved pending appeal, and there is no reason for this Court to ignore the New York Court of Appeals' subsequent decisions in In re Raab, 100 N.Y.2d 305, 763 N.Y.S.2d 213, 793 N.E.2d 1287 (2003) (per curiam) and In re Watson, 100 N.Y.2d 290, 763 N.Y.S.2d 219, 794 N.E.2d 1 (2003) (per curiam), both of which unambiguously affirm that the Commission will consider First Amendment arguments and, further, establish that sanctioned judges may seek mandatory review of the Commission's decision before the Court of Appeals.[13] Such ability to raise constitutional claims in subsequent "state-court judicial review of [an underlying] administrative proceeding" is sufficient to provide plaintiffs with a meaningful opportunity to seek effective relief through state proceedings and bar federal courts from taking jurisdiction over the same claims while the state proceeding is pending.[14] See Ohio Civil Rights Comm'n, 477 U.S. at 629, 106 S.Ct. 2718; Cullen v. Fliegner, 18 F.3d 96, 103 (2d Cir.1994).
 
 
 38
 Significantly, this conclusion is not altered by the fact that Spargo's disciplinary charges may be dismissed on other grounds, such as for lack of substantial evidence, or by the fact that the Court of Appeals may choose to narrowly construe the judicial conduct rules to avoid a potential constitutional confrontation, as the plaintiffs suggest. The relevant question under Younger is "whether the state's procedural remedies could provide the relief sought [not] ... whether the state will provide" the constitutional ruling which the plaintiff seeks. Kirschner, 225 F.3d at 234-35 (emphasis added) (noting that "it [was] irrelevant to the application of Younger that [plaintiff's] constitutional claims... [had] not [been] addressed by the Appellate Division" where the Appellate Division found for plaintiff on alternate grounds). Indeed, insisting on the priority of federal constitutional claims would undermine the considerations of comity and deference that underlie Younger. As the Supreme Court has explained, an "important reason for [Younger] abstention is to avoid unwarranted determination of federal constitutional questions" where it is possible that state courts may resolve the case on state law grounds "without reaching the federal constitutional questions." Pennzoil, 481 U.S. at 11-12, 107 S.Ct. 1519. "Younger abstention in situations like this `offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests.'" Id. at 12, 107 S.Ct. 1519 (quoting Moore v. Sims, 442 U.S. at 429-30, 99 S.Ct. 2371); see also Yamaha Motor Corp., U.S.A., v. Stroud, 179 F.3d 598, 603 (8th Cir.1999) (noting that "[c]omity favors permitting the [state] court system to decide issues of state statutory law, and abstention is called for when it is possible that the state court might interpret the underlying law in such a way as to foreclose the need to review at least some of the plaintiff's federal claims," and indicating that "[t]his rationale applies with even more force when abstention might allow the federal court to avoid unnecessary constitutional questions").[15] Thus, the argument that Spargo's disciplinary proceeding could be resolved on alternative grounds, without deciding the constitutional issues raised in the federal suit, actually weighs in favor of, and not against, the exercise of abstention.[16]
 
 
 39
 Plaintiffs also challenge the adequacy of state proceedings, because the Commission's findings are kept confidential unless a sanctioned judge requests further review by the Court of Appeals, see N.Y. Jud. Law §§ 44(7) & 45, and the Commission has no obligation to issue a full decision should it reach the merits of Spargo's constitutional challenge. In assessing these arguments, we begin by noting that the record gives us no reason to question the ability of either the Commission or the Court of Appeals to fully and fairly address Spargo's constitutional claims despite plaintiffs' intimations to the contrary. In addition, while plaintiffs point to procedural differences between the state administrative process and federal litigation, Younger implicitly recognizes that states may adopt a variety of different procedures to resolve legal disputes, yet it directs federal courts to defer to state procedures, leaving state institutions "free to perform their separate functions in their separate ways." Younger, 401 U.S. at 44, 91 S.Ct. 746. Moreover, similar arguments about the adequacy of state proceedings were rejected by the Supreme Court in Middlesex, a case which also involved a disciplinary hearing before a state ethics committee whose primary mission was fact-finding. See Middlesex County Ethics Comm., 457 U.S. at 429, 102 S.Ct. 2515. The Supreme Court determined that the availability of further judicial review before the state's highest court triggered mandatory abstention under Younger although the ethics committee was not required to issue a formal written opinion of its disciplinary decision and proceedings before the committee were confidential. See id. at 436-37, 102 S.Ct. 2515.
 
 
 40
 We emphasize that Younger merely "presupposes that the plaintiff be able to interpose his federal defense ... in the state court; it does not [additionally] require all procedures for the interposition of the federal defense to be as advantageous in the state court as in the federal action." Kirschner, 225 F.3d at 235; see also Brooks v. New Hampshire Supreme Court, 80 F.3d 633, 639 (1st Cir.1996) (rejecting plaintiff's argument that a state attorney discipline proceeding "is less than adequate because of its confidential character," and noting that "the Supreme Court has never suggested that having an adequate opportunity to present a federal claim requires [that] the parallel state proceeding be open to the public."). In sum, while Spargo may prefer a federal forum, he may pursue his constitutional claims in state proceedings, and therefore, the District Court should have abstained. See 31 Foster Children v. Bush, 329 F.3d 1255, 1279 (11th Cir.) (concluding that "[i]n determining whether the state remedies are adequate ... the relevant question is not whether the state courts can do all that Plaintiffs wish" but rather whether plaintiffs may pursue their federal claims in state proceedings) (internal quotation marks omitted), cert. denied sub nom. Reggie B. v. Bush, ___ U.S. ___, 124 S.Ct. 483, ___ L.Ed.2d ___ (2003).
 
 
 41
 In so holding, we do not ignore the importance of the First Amendment interests at stake or disregard the costs of delay in postponing a decision on the merits. However, Younger itself warns that "the existence of a `chilling effect,' even in the area of First Amendment rights," is not "a sufficient basis, in and of itself, for prohibiting state action." Younger, 401 U.S. at 51, 91 S.Ct. 746. Accordingly, while we recognize that abstention may impose significant costs, the "costs of duplication and delay caused by Younger," For Your Eyes Alone, Inc. v. City of Columbus, 281 F.3d 1209, 1219-20 (11th Cir. 2002), must be balanced against the risk of undue interference and unnecessary conflict with state proceedings. Cf. Younger, 401 U.S. at 44, 91 S.Ct. 746 (rejecting notion that federalism contemplates the "centralization of control over every important issue" in the federal courts). Consequently, while the significance of the First Amendment interests at stake may play a role in Younger analysis, in this case, where the requirements for abstention are clearly satisfied, and Spargo can seek timely review before the New York Court of Appeals, the First Amendment concerns raised by the plaintiffs do not justify any exception to ordinary Younger principles.[17]
 
 
 42
 C. Abstention Over the Related Claims of Third-Parties
 
 
 43
 In support of the District Court's decision, plaintiffs also argue that Younger does not permissibly extend to the claims of McNally and Kermani as neither was a party to the ongoing disciplinary proceeding against Spargo — a question that the Supreme Court left unresolved in Middlesex. See Middlesex County Ethics Comm., 457 U.S. at 437 n. 17, 102 S.Ct. 2515 (noting that "[i]t is not clear whether the Court of Appeals decided whether abstention would be proper as to the [plaintiff] organizations who are not parties to the state disciplinary proceedings," and "leav[ing] this issue to the Court of Appeals on remand"). As we explain more fully below, we reject plaintiffs' attempt to apply Younger in a mechanical fashion and find under the circumstances of this case that the legal interests of McNally and Kermani are sufficiently intertwined with those of Spargo to make abstention applicable to all of the plaintiffs' claims. See generally Doran v. Salem Inn, Inc., 422 U.S. 922, 928, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (warning that while plaintiffs should not "automatically be thrown into the same hopper for Younger purposes," there may plainly "be some circumstances in which legally distinct parties are so closely related that they should all be subject to the Younger considerations which govern any one of them").
 
 
 44
 As the Supreme Court has recognized, in certain circumstances, Younger may apply to the claims of third-parties who are not directly involved in any pending state proceeding. For example, in Hicks v. Miranda, 422 U.S. 332, 348-49, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), the Supreme Court held that Younger barred the claims of two theater owners who sought to enjoin enforcement of a state obscenity statute. Although no state proceedings were pending against the theater owners at the time the federal complaint was filed, criminal charges had been filed against two employees of the theater, and authorities had seized four copies of the allegedly obscene film. The Court concluded that Younger could not be avoided under these circumstances, because the interests of the theater owners and the employees "were intertwined[,] and ... the federal action sought to interfere with the pending state prosecution." Id.
 
 
 45
 This principle was reaffirmed in Doran v. Salem Inn, Inc., 422 U.S. 922, 928, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), where the Supreme Court reiterated that there may be some circumstances where plaintiffs "are so closely related" that abstention will be warranted although not all plaintiffs are subject to the pending state proceeding. Doran involved a suit by three bar owners who sought to enjoin enforcement of a local ordinance prohibiting topless dancing. See id. at 924, 95 S.Ct. 2561. Although all three bar owners had similar business interests and were represented by the same counsel, only one of the owners had been criminally prosecuted in state court. See id. at 928-30, 95 S.Ct. 2561. Because, the plaintiffs were otherwise "unrelated in terms of ownership, control, and management," the Court declined to apply Younger to the two bar owners who had not been subject to state prosecution. See id. at 928-29, 95 S.Ct. 2561.
 
 
 46
 While both Hicks and Doran arguably focus on the fact of joint ownership and control, neither decision limits the application of Younger to cases where the parties are financially related or linked by mutual management. Courts have consistently recognized that while "[c]ongruence of interests is not enough," by itself, to warrant abstention, where the plaintiffs' interests are so inextricably intertwined that "direct interference with the state court proceeding is inevitable," Younger may extend to bar the claims of plaintiffs who are not party to the pending state proceeding. See, e.g., Green v. City of Tucson, 255 F.3d 1086, 1100 (9th Cir.2001) (en banc); see also Cedar Rapids Cellular Tel., L.P., v. Miller, 280 F.3d 874, 881-82 (8th Cir.2002) (noting that for Younger purposes, "the parties in federal and state court need not be identical where the interests of the parties seeking relief in federal court are closely related to those of [the] parties in pending state proceedings and where the federal action seeks to interfere with pending state proceedings") (internal quotation marks omitted).
 
 
 47
 In applying Younger to third-parties, courts should be sensitive to the fact that, "abstention from the exercise of federal jurisdiction is the narrow exception, not the rule," Cecos Int'l, Inc. v. Jorling, 895 F.2d 66, 70 (2d Cir.1990), and that there is "no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." Zablocki v. Redhail, 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); see also Green, 255 F.3d at 1099 (warning that Younger abstention "is not intended to cut a broad swath through the fabric of federal jurisdiction, relegating parties to state court whenever state court litigation could resolve a federal question"); cf. Robinson v. Stovall, 646 F.2d 1087, 1090 (5th Cir. Unit A 1981) (noting that "[e]xcept in extraordinary circumstances, a civil rights plaintiff's ability to sue to vindicate his rights in federal court is not affected by the simultaneous pendency of a state prosecution against someone else" unless the federal plaintiff seeks to directly enjoin the pending state prosecution).
 
 
 48
 Although plaintiffs may seek the same relief, parallel challenges to the constitutionality of a state statute or policy are typically not barred by Younger absent other factors indicating that the plaintiffs' interests are legally interwoven or interconnected. See generally Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (plaintiff was not barred from seeking federal declaratory relief, where only his companion had been arrested for distributing handbills, and no state criminal proceeding was pending against plaintiff at the time the federal complaint was filed); Casa Marie, 988 F.2d at 267-68 (noting that "unrelated, legally distinct parties" may "mount separate but simultaneous legal challenges to the constitutionality of a state statute").[18] In this case, however, McNally and Kermani do not assert independent First Amendment rights, nor do they bring truly separate challenges to the judicial conduct rules.
 
 
 49
 Because the judicial conduct rules apply only to judges and judicial candidates, McNally and Kermani are not directly regulated by the challenged rules. Instead, McNally and Kermani claim standing to bring suit based on their interest in receiving political speech from judges and judicial candidates and in associating politically with elected judges without the restrictions imposed by the conduct rules. While it is well-established that the First Amendment protects not only the right to engage in protected speech, but also the right to receive such speech, see Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, 425 U.S. 748, 756, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (noting that where a willing speaker exists, First Amendment protection extends to both the source as well as the recipient of the protected communication), — it remains true that the rights of the recipients of speech (such as McNally and Kermani) derive in the first instance from the primary rights of the speaker. See In re App. of Dow Jones & Co., 842 F.2d 603, 608 (2d Cir.), cert. denied sub nom. Dow Jones & Co. v. Simon, 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988); N.A.A.C.P., Los Angeles Branch v. Jones, 131 F.3d 1317, 1322 & n. 5 (9th Cir.1997), cert. denied, 525 U.S. 813, 119 S.Ct. 48, 142 L.Ed.2d 37 (1998).
 
 
 50
 As a result, McNally and Kermani may claim no greater First Amendment protection than Spargo, and their "[s]uccess on the merits ... is entirely derivative" of whatever rights that Spargo may have to engage in the prohibited speech and political activity.[19] See In re App. of Dow Jones & Co., 842 F.2d at 608 (explaining that plaintiff news agencies' "right to receive speech does not enlarge the rights of those directly subject to the [challenged] restraining order"); Jones, 131 F.3d at 1322-23 (concluding that "voter plaintiffs, as recipients of campaign speech, have no greater rights than the candidates to have candidates publish statements," and "plaintiffs' status as voters in an election does not extend their First Amendment rights to include a more general right to receive publicly funded campaign speech"). Because McNally and Kermani could have a protected interest in hearing Spargo speak and in associating politically with Spargo only if Spargo has an underlying First Amendment right to engage in such speech and political activity, the legal analysis of the plaintiffs' claims are unavoidably intertwined and inseparable. McNally's and Kermani's claims are largely the mirror-image of Spargo's First Amendment challenge, and it would be impossible for the District Court to analyze plaintiffs' claims independently without first analyzing Spargo's constitutional right to engage in the charged conduct, a matter which, under Younger, must be resolved in the pending state disciplinary proceeding.
 
 
 51
 Because plaintiffs' claims are essentially derivative, this case presents one of the narrow circumstances in which Younger may properly extend to bar claims of third-parties who are not directly involved in the pending state action.[20] Cf. Allee v. Medrano, 416 U.S. 802, 830-31, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) (Burger, J., concurring in the judgment in part and dissenting in part) (reasoning that Younger abstention should also apply to a union's First Amendment claims, where the union is seeking to assert the interests of members prosecuted in state court); but see N.J.-Philadelphia Presbytery of the Bible Presbyterian Church v. N.J. State Bd. of Higher Educ., 654 F.2d 868, 877-88 (3d Cir.1981) (in a First Amendment challenge to a state licensing regime, abstention did not extend to plaintiffs who were not party to the state proceeding, because the parents, students, and teachers involved in the suit asserted First Amendment rights distinct from those of the religious college involved in the ongoing state litigation).
 
 
 52
 Moreover, the second prerequisite for extending Younger is present, as plaintiffs seek to directly interfere with the pending disciplinary proceeding against Spargo by requesting that the District Court permanently enjoin defendants from pursuing the disciplinary proceeding or otherwise enforcing the challenged judicial conduct rules. In addition, there is no suggestion that Spargo would fail to adequately represent plaintiffs' interests in the state disciplinary proceeding, and it appears that McNally and Kermani could seek to appear as amici curiae, see 22 N.Y.C.R.R. § 500.11(e), should the case eventually reach the Court of Appeals, see In re Raab, 100 N.Y.2d 305, 763 N.Y.S.2d 213, 793 N.E.2d 1287 (2003) (per curiam) (permitting the filing of amici curiae briefs in analyzing First Amendment challenge to judicial conduct rules); In re Watson, 100 N.Y.2d 290, 763 N.Y.S.2d 219, 794 N.E.2d 1 (2003) (per curiam) (same), or attempt to bring a separate declaratory judgment action challenging the constitutionality of the rules. See N.Y. C.P.L.R. § 3001 (authorizing the state supreme court to "render a declaratory judgment having the effect of a final judgment as to the rights and legal relations of the parties to a justiciable controversy"); Schultz v. City of Port Jervis, 242 A.D.2d 699, 662 N.Y.S.2d 591, 592 (2d Dep't 1997) (mem.) (noting that "a declaratory judgment action is the appropriate procedural vehicle to challenge the constitutionality of a [state] statute or ordinance").[21]
 
 Conclusion
 
 53
 In sum, for the reasons stated above, we conclude that Spargo has an adequate opportunity to raise his constitutional claims in the pending disciplinary proceeding and accordingly hold that the District Court should have abstained from exercising jurisdiction over Spargo's claims in deference to the state proceeding. In addition, we find that the First Amendment interests of plaintiffs McNally and Kermani are derivative of Spargo's right to engage in protected speech. Because plaintiffs' legal claims are inextricably intertwined, and the federal suit seeks to directly interfere with the pending state disciplinary proceeding, we conclude that Younger extends to bar the claims of McNally and Kermani although neither is a party to the state disciplinary proceeding. We therefore vacate the judgment of the District Court and remand with instruction to the District Court to abstain from exercising jurisdiction over the plaintiffs' action.[22]
 
 
 
 Notes:
 
 
 [1]
 The judicial conduct rules are codified in Title 22 of the Official Compilation of Codes, Rules & Regulations of the State of New York. The rules are also set forth in Part 100 of the Rules of the Chief Administrator of the Courts. For consistency, we adopt the same citation format as the District Court below and refer to the rules of judicial conduct "generally as the `Rules' or specifically as `22 NYCRR § xx.'"See Spargo v. N.Y. State Comm'n on Judicial Conduct, 244 F.Supp.2d 72, 76 n. 3 (N.D.N.Y.2003).
 
 
 [2]
 The Commission is composed of eleven appointed members representing lawyers, judges, and members of the public, each of whom serves a term of four years. The Governor of New York appoints four members of the Commission, the Chief Judge of the Court of Appeals appoints three members, and each of the four leaders of the State Legislature appoints one of the remaining four positions. All members of the Commission serve part-time without financial compensationSee N.Y. Const. art. VI § 22(b); N.Y. Jud. Law § 41.
 
 
 [3]
 During the course of the pending investigation, Spargo was represented by counsel, testified four times, and was afforded the opportunity to submit materials in his own defense
 
 
 [4]
 For a more detailed explanation of the underlying facts, the development of the New York Code of Judicial Conduct, and the judicial disciplinary process, we refer readers to the District Court's thorough discussion at 244 F.Supp.2d at 74-81
 
 
 [5]
 Section 44(7) provides that "[a]fter a hearing, the commission may determine that a judge be admonished, censured, removed or retired [and] ... [t]he judge involved may either accept the determination of the commission or make writtenrequest to the chief judge ... for a review thereof by the court of appeals." N.Y. Jud. Law § 44(7) (emphasis added).
 
 
 [6]
 In its decision, the District Court specifically recognized that the question of whether review of the Committee's disciplinary findings is mandatory or discretionary is a question of state law "more properly answered by the New York Court of Appeals."Spargo, F.Supp.2d at 84 n. 9. However, lacking authority to certify the question to the Court of Appeals, the District Court felt compelled to reach the abstention question based on the record provided by the parties. Cf. Butler v. Ala. Judicial Inquiry Comm'n, 245 F.3d 1257 (11th Cir.2001) (certifying procedural questions to the Alabama Supreme Court to determine whether plaintiff could raise constitutional challenges to state canons of judicial ethics during the course of state disciplinary proceedings, thus satisfying the requirements for Younger abstention).
 
 
 [7]
 InWhite, the Supreme Court determined that a Minnesota provision prohibiting judicial candidates from announcing their views on disputed legal and political issues violates the First Amendment. See White, 536 U.S. at 788, 122 S.Ct. 2528. The majority in White specifically noted "[t]here is an obvious tension between the article of Minnesota's popularly approved Constitution which provides that judges shall be elected, and the Minnesota Supreme Court's announce clause which places most subjects of interest to the voters off limits." Id. at 787, 122 S.Ct. 2528.
 
 
 [8]
 Under New York law, judicial candidates may announce their views on disputed issues, as long as they avoid "mak[ing] pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office," and refrain from issuing "statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court." 22 N.Y.C.R.R. § 100.5(A)(4)(d)(i)(ii). Plaintiffs do not contend that these provisions violate the First AmendmentCf. Watson, 763 N.Y.S.2d at 224-26, 794 N.E.2d 1 (interpreting 22 N.Y.C.R.R. § 100.5(A)(4)(d)(i) and concluding that the judicial conduct rules' limited ban on pledges or promises survives First Amendment scrutiny).
 
 
 [9]
 After the District Court denied defendant's request for a stay pending appeal,see Spargo v. N.Y. State Comm'n on Judicial Conduct, 2003 WL 2002762 (N.D.N.Y. Apr.29, 2003), this Court granted defendants' motion for an expedited briefing schedule and for a stay of judgment pursuant to FED. R. App. P. 8(a)(2).
 
 
 [10]
 But see Ctr. for Reproductive Law & Policy v. Bush, 304 F.3d 183, 193-95 (2d Cir.2002) (indicating that there may be certain exceptional cases where the court may dispose of the case on the merits to avoid deciding a novel and difficult question of standing).
 
 
 [11]
 "Despite the strong policy in favor of abstention," even whereYounger would otherwise apply, a federal court may still intervene in state proceedings if the plaintiff demonstrates "bad faith, harassment or any other unusual circumstance that would call for equitable relief." Diamond "D" Constr., 282 F.3d at 198 (quoting Younger, 401 U.S. at 54, 91 S.Ct. 746 and delineating scope of the "bad faith" and "extraordinary circumstances" exceptions to Younger abstention). However, plaintiffs do not allege that any of these exceptions apply here.
 
 
 [12]
 Moreover, while "Younger abstention often involves a level of uncertainty," a plaintiff, like Spargo, who decides to file a federal action before presenting his constitutional claims in state proceedings may himself preclude the federal court from knowing with any assurance "how the state court would have responded." Butler, 261 F.3d at 1159 n. 6; cf. Middlesex County Ethics Comm., 457 U.S. at 435, 102 S.Ct. 2515 (concluding that Younger abstention was warranted where the plaintiff had not attempted to raise his constitutional challenges in his state disciplinary proceeding and could point to no regulatory or statutory authority that would have barred the ethics committee from considering his constitutional claims).
 
 
 [13]
 We acknowledge that the District Court did not have the benefit of these Court of Appeals decisions when faced with the threshold abstention question, and in this case, unlike inMiddlesex, "proceedings of substance on the merits" had taken place in federal court prior to the subsequent clarification of the scope of state proceedings. Middlesex County Ethics Comm., 457 U.S. at 436, 102 S.Ct. 2515 (quoting Hicks v. Miranda, 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975)). Even under these circumstances, we believe that abstention is still appropriate. Perhaps the balance of equities would be different in another situation where state law changes substantially during the pendency of the federal case. But here, where there was merely initial ambiguity as to the scope of available judicial review, a possibility that does not prevent the application of Younger, abstention is not precluded solely because the District Court ruled on the merits of plaintiffs' constitutional claims.
 
 
 [14]
 Indeed, some courts would hold that abstention is required even where only discretionary judicial review is available. InHirsch v. Justices of the Supreme Court of California, 67 F.3d 708, 712-13 (9th Cir.1995) (per curiam), for example, the Ninth Circuit affirmed the dismissal of plaintiffs' constitutional challenges to the California attorney discipline system although constitutional claims could not be considered during the initial disciplinary proceeding and the California Supreme Court's review of the disciplinary decision was wholly discretionary. The Ninth Circuit reasoned that "[j]udicial review is inadequate" under Younger "only when state procedural law bars presentation of the federal claims" and "[t]he fact that review is discretionary does not bar presentation of [plaintiff's] federal claims." Id. at 713; see also Fieger v. Thomas, 74 F.3d 740, 748-49 (6th Cir.1996) (rejecting argument that Younger can only apply where the plaintiff has an appeal as of right from an adverse administrative decision).
 
 
 [15]
 The same considerations that weigh in favor of abstention also counsel in favor of certification to state courts to avoid "premature adjudication of constitutional questions... when a federal court is asked to invalidate a State's law."See Arizonans for Official English v. Arizona, 520 U.S. 43, 79, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997).
 
 
 [16]
 Plaintiffs also suggest that the Commission could keep constitutional challenges from reaching the Court of Appeals by strategically dismissing misconduct charges. However, these allegations are merely speculative, and there is no reason to believe that the Commission would so act, in direct contravention of its statutory duty
 
 
 [17]
 We note that plaintiffs are not entitled to any presumption against abstention simply because they have challenged multiple provisions of the judicial conduct rules and seek sweeping injunctive relief. Generally, "[t]he breadth of a challenge to a complex state statutory scheme ... militate[s] infavor of abstention, not against it ... [due] to the primacy of the State in the interpretation of its own laws and the cost to our federal system... inherent in federal-court interpretation and subsequent invalidation of parts of an integrated statutory framework." Moore v. Sims, 442 U.S. 415, 427, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (emphasis in original); see also Fieger v. Thomas, 74 F.3d 740, 745 (6th Cir.1996) (same).
 
 
 [18]
 As the Supreme Court explained inDoran, the existence of such parallel suits is simply a necessary cost of our federal system which vests concurrent jurisdiction over constitutional issues in both federal and state courts. See Doran, 422 U.S. at 928, 95 S.Ct. 2561.
 
 
 [19]
 McNally and Kermani also allege in conclusory fashion that they have refrained from associating with and supporting other judges and judicial candidates because of the disciplinary charges against Spargo. However, McNally and Kermani have not specifically identified any other judges or judicial candidates who wish to engage in allegedly prohibited speech or political activity, nor does the record demonstrate that there is a likelihood of future disciplinary action against any judge or judicial candidate whom McNally and Kermani wish to support politically
 Under these circumstances, there is substantial doubt as to whether plaintiffs have standing to seek equitable relief based on the speech of other judges, and even if plaintiffs could demonstrate such standing, whether the controversy is sufficiently ripe for adjudication. See, e.g., Competitive Enter. Inst. v. U.S. Dept. of Transp., 856 F.2d 1563, 1566 (D.C.Cir.1988) (noting that "[w]hether the injury is phrased as a deprivation of information that the listener would find useful or the interference with a relationship between speaker and listener, a government regulation cannot cause that injury unless [plaintiffs] can identify a willing speaker"); Basiardanes v. City of Galveston, 682 F.2d 1203, 1211 (5th Cir. 1982) ("Recipients of protected communications have standing only if there is a speaker who wishes to express himself or herself."); cf. Nutritional Health Alliance v. Shalala, 144 F.3d 220, 225-27, 228 (2d Cir.) (dismissing preenforcement First Amendment facial challenge to federal dietary supplement labeling regulations as unripe), cert. denied, 525 U.S. 1040, 119 S.Ct. 589, 142 L.Ed.2d 532 (1998).
 In any event, plaintiffs' allegations about other judges and judicial candidates are too speculative to avoid the application of Younger. Throughout this litigation, plaintiffs have relied almost exclusively on their close relationship with Spargo to establish an interest in the challenged judicial conduct rules, and therefore, cannot now seek to downplay the connection to prevail on Younger grounds, Cf. Collins v. County of Kendall, 807 F.2d 95, 102 (7th Cir.1986) (concluding that court would not ignore the parties' close relationship in determining the scope of Younger abstention where the plaintiff had previously urged the court to view the facts as a whole and treat the plaintiffs as tightly connected), cert. denied, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987).
 
 
 [20]
 Although not dispositive, we note that the case for abstention is particularly strong as to McNally, as Spargo is specifically charged with authorizing an improper payment to McNally in violation of 22 N.Y.C.R.R. §§ 100.1, 100.2, and 100.5(A)(4)(a). In addition, while McNally is technically not a party to the pending disciplinary proceeding, she was subpoenaed to testify before the Commission during the course of its investigation into Spargo's campaign activities
 
 
 [21]
 Although some courts have suggested thatYounger can only be applied to third-party plaintiffs whose interests are closely aligned with a state court litigant if the third-party plaintiffs can intervene in the state proceeding to protect their interests, see, e.g., Robinson, 646 F.2d at 1092, Casa Marie, 988 F.2d at 267, New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church, 654 F.2d at 882, we believe in the particular circumstances before us, that Younger need not be read so restrictively.
 
 
 [22]
 In so doing, we again caution that we express no view on the merits of the plaintiffs' claims or the substance of the District Court's First Amendment analysis